Robert F. MIXER, Plaintiff,

v.

M.K.–FERGUSON COMPANY, a
corporation, and Fred B.
Cross, Defendants.

Civil Action No. 6:98–0326.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Aug. 12, 1998.

Jane E. Peak, Allan N. Karlin, Allan N. Karlin & Associates, Morgantown, WV, for Plaintiff.

Jennifer Z. Cain, Jackson & Kelly, Parkersburg, WV, Charles M. Surber, Jr., Jackson & Kelly, Charleston, WV, for Defendants.

## REMAND ORDER

GOODWIN, District Judge.

Pending before the Court is the plaintiff's motion to remand this state-law age discrimination case to the Circuit Court of Wood County, West Virginia, for lack of subject-matter jurisdiction. The defendants had removed the case to federal court based upon their assertion that § 301 of the Labor Management Relations Act (LMRA) pre-empts the plaintiff's claim, thereby creating federal subject-matter jurisdiction. As explained more fully below, § 301 pre-empts claims that arise out of a collective-bargaining agreement. The defendants here assert that all claims raised by employees covered by the collective-bargaining agreement are dependent on the agreement due to the mandatory arbitration clause contained therein. On that basis, the defendants claim that § 301 preempts this case and forms the basis for federal subject-matter jurisdiction. The plaintiff, however, moves for remand based upon his assertion that § 301 pre-empts only those claims which require interpretation of the collective-bargaining agreement to determine whether the elements of the state-law claim are met. He argues that his discrimination claim arises from state law and is independent on its face from any rights conferred upon employees by virtue of the collective-bargaining agreement. This, the plaintiff argues, is unaltered by the fact that the mandatory arbitration clause may ultimately prove to be a dispositive defense in state court. After careful consideration of both parties' arguments, the Court **FINDS** as follows:

First, when faced with the question of whether § 301 pre-emption forms the basis of federal subject-matter jurisdiction, courts must resolve the pre-emption issue before delving into an interpretation of the collective-bargaining agreement to decide whether to dismiss the claim for failure to exhaust arbitral remedies. Federal courts are utterly without judicial power to dismiss a claim based upon a mandatory arbitration clause if independent federal subject-matter jurisdiction under Article III is not present. Thus, § 301 pre-emption must first be addressed.

Second, § 301 pre-empts only those state-law claims which are incapable of resolution without interpretation of a collective-bargaining agreement such that the claim may be fairly characterized as *emanating* from the agreement itself. The fact that a collective-bargaining agreement commits state-law claims to mandatory arbitration does not establish § 301 pre-emption. Rather, such an arbitration provision merely dictates the judicial or quasi-judicial forum in which the claim ultimately will be resolved. Section 301 pre-emption exists when, in deciphering the source of law from which a claim originates, the ultimate decision-maker cannot determine *liability* without reference to a collective-bargaining agreement. Such pre-emption does not exist when the ultimate de-

cision-maker must simply refer to the agreement to decide whether a cause of action properly asserted in state court must be submitted to arbitration.

For these reasons and for reasons stated more fully herein, plaintiff's motion to remand is **GRANTED**.

### Factual and Procedural Background

Plaintiff Robert Mixer worked as a tail-lift operator for defendant M.K. Ferguson Company, a construction contractor located in Wood County. West Virginia. During his employment with M.K. Ferguson, the plaintiff was covered by a collective-bargaining agreement known as the General Presidents' Project Maintenance Agreement (CBA). M.K. Ferguson and the plaintiff's union, the International Brotherhood of Teamsters, were both signatories to the CBA.

On January 9, 1998, the plaintiff was laid off. At the time of his layoff, he was 59 years old. According to the plaintiff, M.K. Ferguson chose to retain employees who were younger than him, and to terminate his employment despite the fact that he was "performing his duties and responsibilities in a manner that met the reasonable expectations of the defendants." Complaint ¶ 11. Believing that the defendants laid him off in full or in part because of his age, the plaintiff filed an age discrimination claim in the Circuit Court of Wood County, West Virginia pursuant to the West Virginia Human Rights Act.

The defendants then removed the case to federal court, asserting pre-emption of the plaintiff's state-law claim under § 301 of the LMRA. Essentially, the defendants claim that the combination of a nondiscrimination clause and an arbitration clause in the CBA[1] preclude the state court from hearing the

plaintiff's state-law claim because the claim was not submitted to arbitration. According to the defendants, it is this alleged failure to exhaust arbitral remedies which compels pre-emption of the plaintiff's state-law claim under § 301, thus forming the basis for federal jurisdiction. By contrast, the plaintiff contends that failure to exhaust arbitral remedies has no bearing on the issue of whether a state-law claim is pre-empted under § 301. Accordingly, the plaintiff filed this timely motion to remand the case to the Wood County Circuit Court.

### Legal Analysis

■ Article III of the United States Constitution establishes several specific categories of federal court jurisdiction. A federal court may not exercise the judicial power of the United States unless the court first is satisfied that jurisdiction over the subject matter of the action exists within one of the specific categories described in Article III. Here, the defendants removed the case to federal court under 28 U.S.C. § 1441 by alleging federal question jurisdiction.[2] To overcome plaintiff's motion to remand, defendants bear the burden of proving the existence of a federal question. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, remand is necessary." *Id.* (citations omitted).

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As the Supreme Court explained, the well-plead-

---

**1.** Article IV of the CBA provides that "[t]he Union and the Contractor shall not discriminate against any employee ... because of race, creed, color, sex, national origin or age or disability." (Def. Resp. To Pl. Mot. To Remand Ex. C). Article XXIII further provides that all employees "shall have the protection of all existing federal, state and local laws applicable to employees in general." *Id.* Finally, Article VII provides that "[a]ll grievances which may arise on any work covered by this Agreement" are subject to binding arbitration. *Id.*

**2.** Article III of the Constitution provides federal court jurisdiction for "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." To effectuate this provision of Article III. 28 U.S.C. § 1331 provides that "district courts ... have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

ed complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Here, plaintiff has chosen to rely exclusively on state law in his single-count complaint, alleging age discrimination in violation of the West Virginia Human Rights Act. Thus from the face of the complaint, there is no indication that plaintiff's case "aris[es] under the Constitution, laws, or treaties of the United States," as would be necessary to establish federal question jurisdiction under 28 U.S.C. § 1331.

■ However, defendants have answered the complaint by asserting the federal defense of preemption under § 301 of the LMRA. Ordinarily, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393. But the Supreme Court has qualified this rule, reasoning that:

On occasion ... the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule. Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* (citations and quotations omitted). Accordingly, the issue before the Court is whether plaintiff's state-law claim is completely pre-empted by § 301 of the LMRA.

■ Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1988). In its most obvious application, § 301 completely pre-empts state-law claims asserting breach of a collective-bargaining agreement. In such cases, the plaintiff is seeking to enforce rights that arise from the agreement itself in state court. This would undermine the goal of uniformity in federal labor law for which Congress enacted § 301. *See Teamsters v. Lucas Flour,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). However, § 301 may also preempt claims asserted under state law in which the plaintiff does not seek direct enforcement of a collective-bargaining agreement. For example, in *Allis–Chalmers Corporation v. Lueck,* the Supreme Court ruled that the plaintiff's state-law cause of action for bad-faith handling of an insurance claim was preempted under § 301. 471 U.S. 202, 218, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). To reach its conclusion, the Court considered:

whether the [state] tort action for breach of the duty of good faith ... confers non-negotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state law purports to define the meaning of the contract relationship, that law is preempted.

*Id.* at 213, 105 S.Ct. 1904. The Court then reasoned that "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." *Id.* at 218, 105 S.Ct. 1904. Because plaintiff's tort claim derived from breach of the contractual duty of good faith and fair dealing and thus was substantially dependent upon analysis of the collective-bargaining agreement, the Court held that it was preempted by § 301. *Id.* at 220, 105 S.Ct. 1904.

The purpose of § 301 pre-emption is "to ensure that all claims raising issues of labor contract interpretation are decided according to federal labor law, so as to guard against inconsistent interpretations under state and federal law." *Martin Marietta Corp. v. Maryland Comm'n on Human Relations,* 38 F.3d 1392, 1397 (4th Cir.1994). But the Su-

preme Court has cautioned that although the pre-emptive force of § 301 may extend beyond breach of contract cases, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. 1904. In defining the proper scope of § 301 pre-emption, the Court explained that:

Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id.* at 211–12, 105 S.Ct. 1904.

The Court applied this reasoning in *Lingle v. Norge Division of Magic Chef, Inc.,* holding that § 301 did not pre-empt plaintiff's state-law claim for retaliatory discharge. 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). First, the Court reviewed the elements of retaliatory discharge under Illinois state law and concluded that:

Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of the collective-bargaining agreement. . . . [T]his purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state law remedy . . . is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Id.* at 407, 108 S.Ct. 1877. Second, the Court ruled that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409–10, 108 S.Ct. 1877. Finally, the Court concluded that the independent character of the state-law claim was unaltered by the fact that the collective-bargaining agreement contained a broad contractual protection against retaliatory discharge under which the plaintiff ostensibly could have pursued contractual remedies. *Id.* at 412–13, 108 S.Ct. 1877.

In a more recent case, the Supreme Court reiterated the limits of § 301 pre-emption, instructing that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Rather, "it is the legal character of the claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward." *Id.* at 123–24, 114 S.Ct. 2068. Employing this analysis, the *Livadas* Court ruled that a state-law claim for immediate wage payment upon an employee's discharge was not pre-empted by § 301 because:

The only issue raised by Lividas's claim, whether Safeway "wilfully fail[ed] to pay" her wages promptly upon severance, was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer. There is no indication that there was a "dispute" in this case over the amount of the penalty to which Lividas would be entitled, and Lingle makes plain in so many words that when liability is governed by independent state law, the mere need to "look to" the collective-bargaining agreement for dam-

ages computation is no reason to hold the state-law claim defeated by § 301.

*Id.* at 124–25, 114 S.Ct. 2068 (citations omitted).[3]

In addition to Supreme Court precedent, the Court is guided by decisions of the Fourth Circuit and of other courts in this district. For example, in *Martin Marietta,* the Fourth Circuit ruled that the plaintiff's state-law claim of handicap discrimination was not "inextricably intertwined with construction and application of terms of the CBAs," and thus was not pre-empted under § 301. 38 F.3d at 1402; *see also Jackson v. Kimel,* 992 F.2d 1318, 1327 (4th Cir.1993) (state-law claim of intentional infliction of emotional distress not pre-empted under § 301 because determination of duty of care owed did not require interpretation of the collective-bargaining agreement). Additionally, in a case strikingly similar to the instant case, another court in this district ruled that sex and handicap discrimination claims under the West Virginia Human Rights Act were not pre-empted by § 301 and, therefore, remanded the case to state court. *Blair v. Schott Scientific Glass Co.,* 945 F.Supp. 123 (S.D.W.Va.1996); *see also Knox v. Wheeling–Pittsburgh Steel Corp.,* 899 F.Supp. 1529 (N.D.W.Va.1995) (sex discrimination claim under West Virginia Human Rights Act not pre-empted by § 301). Following the Supreme Court's reasoning in *Lingle,* the *Blair* court determined that "resolution of [plaintiff's] claim will turn on the conduct and motivations of Defendants rather than on the standards of the CBA." 945 F.Supp. at 127. Therefore, the *Blair* court concluded that the plaintiff's claim was independent of the collective-bargaining agreement in that resolution of the claim did not require interpretation of the agreement. *Id.* at 128.

Here, the defendants assert that the plaintiff's state-law claim is pre-empted by § 301 because it is subject to mandatory arbitration under the terms of the CBA. In support of their argument, the defendants cite *Austin v.*

*Owens–Brockway Glass Container, Inc.,* in which the Fourth Circuit ruled that the plaintiff's federal claims under Title VII and the Americans with Disabilities Act ("ADA") were subject to mandatory arbitration under the terms of the applicable collective-bargaining agreement. 78 F.3d 875 (4th Cir. 1996). The defendants also cite *Price v. Goals Coal Co.,* a case which I decided last year. Civil Action No. 5:96–1932 (S.D.W.Va. May 14, 1997), *appeal docketed,* 1998 WL 536371, No. 97–1710 (4th Cir.1997). In *Price,* I concluded that the plaintiff's state-law claim of age discrimination under the West Virginia Human Rights Act was subject to mandatory arbitration under the terms of the relevant collective-bargaining agreement. *Id.* at 7. Therefore, I dismissed the case without prejudice for failure to exhaust arbitral remedies and denied the plaintiff's motion to remand as moot without addressing the § 301 pre-emption issue. *Id.* at 1 n. 1. The defendants urge me to resolve this case in a similar fashion. After careful consideration of newly decided cases and evaluation of the controlling legal authorities, I have come to the conclusion that *Price* was wrongly decided.

The primary flaw in *Price* and in the defendants' argument is the reliance on *Austin* to resolve motions to remand where defendants assert pre-emption under § 301. *Austin* simply has no bearing upon the issue of whether a state-law claim is pre-empted under § 301. In *Austin,* there was no question that the federal court had Article III jurisdiction because the plaintiff's complaint alleged violations of federal law (Title VII and the ADA) on its face. The issue before the court was whether the plaintiff's federal claims were subject to mandatory arbitration under the terms of the relevant collective-bargaining agreement. Here, by contrast, the issue is whether the plaintiff's state-law claim is independent of the collective-bargaining agreement in that its resolution does not require interpretation of the agreement.

**3.** The *Livadas* Court recognized that "the Courts of Appeals have not been entirely uniform in their understanding and application of *Lingle* and [*Allis–Chalmers Corp. v.*] *Lueck[,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)]." 512 U.S. at 124 n. 18, 114 S.Ct. 2068. Nonethe-

less, the *Livadas* Court passed on the opportunity to articulate a clear test for § 301 pre-emption because the case involved "non-pre-emption under § 301 [which was] clear beyond preadventure." *Id.* Not having that luxury presently, this Court is forced to discern a bright-line rule.

These are two wholly distinct issues: one addresses arbitrability and the other addresses § 301 pre-emption. It is resolution only of the latter issue that determines whether a federal court has Article III jurisdiction over a state-law claim.

■ Thus, the Court must decide the § 301 pre-emption issue before addressing whether the plaintiff's state-law claim is subject to mandatory arbitration under the terms of the CBA. This is because the determination that the plaintiff's state-law claim is pre-empted under § 301 forms the basis for the Court's federal subject-matter jurisdiction. Without § 301 pre-emption, the Court has no authority under Article III to decide whether the plaintiff's claim should be dismissed for failure to exhaust arbitral remedies. Recently, the Fifth Circuit underscored the fundamental principle that federal courts may not exercise the judicial power of the United States in the absence of subject-matter jurisdiction in *Marathon Oil Company v. Ruhrgas,* 145 F.3d 211 (5th Cir.1998). There, the court concluded that when confronted with motions to remand in removed cases, "courts should decide issues of subject-matter jurisdiction first and, only if subject-matter jurisdiction is found to exist, reach issues of personal jurisdiction." *Id.* at 214. To support this conclusion, the court explained that:

> [I]n the removal context, when a federal district court that lacks subject-matter jurisdiction dismisses instead for want of personal jurisdiction, it impermissibly wrests that decision from the state courts. This follows from the fact because, after remand, such a case would have to remain within the state courts, questions of personal jurisdiction necessarily would fall within the state courts' exclusive, residual jurisdiction ....

> A federal court's decision that it lacks subject-matter jurisdiction, by contrast, returns the case to the state court so that it can adjudicate or dismiss. That decision does not intrude on the power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts.

*Id.* at 218–19 (citations and quotations omitted).

This reasoning should apply to questions of arbitrability as well as to questions of personal jurisdiction. Like a determination that personal jurisdiction is lacking, a determination that a plaintiff failed to exhaust mandatory arbitral remedies deprives courts of jurisdiction and warrants dismissal of the claim. But a federal court should not dismiss a claim over which it lacks Article III jurisdiction. Rather, the state court should decide whether to dismiss the case either for lack of personal jurisdiction or for failure to exhaust arbitral remedies. Here, in the absence of Article III jurisdiction, it is the Wood County Circuit Court that is entitled to decide whether the plaintiff's state-law claim is subject to mandatory arbitration under the terms of the CBA. For this Court to decide the issue of arbitrability, as the defendants have suggested, without first addressing the issue of federal jurisdiction, would "threaten[ ] the Article III principles of separation of powers and federalism in the context of a removed case." *Id.* at 219.

However, the dissent in *Marathon Oil* espoused a different view, arguing that courts should be able to resolve straightforward personal jurisdiction issues before grappling with more difficult issues of subject-matter jurisdiction. *Id.* at 231. Several circuit courts have taken a similar approach, by allowing district courts to decide cases on the merits without addressing jurisdictional objections if the merits question can be more easily resolved than the jurisdictional question and the prevailing party on the merits would be the same as the prevailing party on the jurisdictional question. *See, e.g., SEC v. American Capital Invs., Inc.,* 98 F.3d 1133, 1139–40 (9th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1468, 137 L.Ed.2d 681 (1997); *Smith v. Avino,* 91 F.3d 105, 108 (11th Cir. 1996); *United States v. Parcel of Land,* 928 F.2d 1, 4 (1st Cir.1991); *Browning–Ferris Indus. v. Muszynski,* 899 F.2d 151, 154–59 (2d Cir.1990). But this term, the Supreme Court invalidated the practice of these circuit courts in *Steel Company v. Citizens for a Better Environment,* finding that such a practice "carries the courts beyond the bounds of authorized judicial action and thus

offends fundamental principles of separation of powers." —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). As the Court explained, "[t]he requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (quotations omitted). Thus, the Court definitively ruled that Article III jurisdiction must be established in every case before courts may proceed to decide cases on the merits. *Id.*

The *Marathon Oil* dissent attempted to distinguish *Steel Company,* —— U.S. ——, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) by pointing out that the Court's ruling prohibited the practice of deciding cases on the merits before deciding jurisdictional questions, and not the practice of deciding one type of jurisdictional question before another. 145 F.3d at 227–28. However, the *Marathon Oil* dissent agreed that the "standard practice" is to first resolve issues of subject-matter jurisdiction. *Id.* at 233. In the instant case, there is less reason to depart from "standard practice" than in *Marathon Oil.* The arbitrability question presented here requires detailed analysis of contractual language to determine whether the parties' intended to arbitrate certain claims, unlike the relatively simple personal jurisdiction issue presented in *Marathon Oil.* Thus, even if I adopted the dissent's view and decided the arbitrability issue before the pre-emption issue, I would not be serving prudential interests or the interests of judicial economy.

■ To determine § 301 pre-emption, the proper analysis focuses on whether the plaintiff's state-law claim is independent of the relevant collective-bargaining agreement, in that resolution of the state-law claim does not "require construing the collective-bargaining agreement." *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877; *see also McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 535 (4th Cir.1991) ("the question in [§ 301] preemption analysis is not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement"). Here, the defendants argue that the plaintiff's state-law claim must be

pre-empted under § 301 because it may not be resolved without construing the CBA. The Court disagrees.

■ Under *Lingle,* the Court must first review the elements of the plaintiff's age discrimination claim under the West Virginia Human Rights Act. 486 U.S. at 407, 108 S.Ct. 1877. To prove his claim, the plaintiff must establish that; (1) he is over 40 years of age; (2) the defendants made an adverse employment decision concerning him; and (3) but for his age, the defendants would not have taken the adverse employment action against him, or that his age was a substantial factor in the defendants' decision to take the adverse employment action against him. *Barlow v. Hester Indus., Inc.,* 198 W.Va. 118, 479 S.E.2d 628, 645–46 (W.Va.1996); *see also Skaggs v. Elk Run Coal Co.,* 198 W.Va. 51, 479 S.E.2d 561 (W.Va.1996). These three elements present "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," which may be resolved without construing the CBA. *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877. Although Article IV of the CBA purports to prohibit age discrimination, its language does not provide any guidance as to what conduct would constitute discrimination under state law. Moreover, even if the CBA did contain extensive language on discrimination, the Court still could resolve the state-law claim without construing the CBA. As the district court in *Knox* explained:

> discrimination in the workplace is illegal regardless of whether such discrimination is also prohibited by the collective bargaining agreement. Thus, even though the CBA may have been "crystal clear" in prohibiting discrimination, it is not necessary to interpret the CBA to resolve the state law discrimination claim.

899 F.Supp. at 1535. Here, the plaintiff's claim will be resolved under statutory standards rather than under the standards of the CBA. Thus, there is no need to interpret the CBA and consequently, no pre-emption under § 301.

■ The defendants maintain, however, that the plaintiff's claim may not be resolved without interpretation of the CBA's arbitration clause. Again, the Court disagrees.

This arbitration clause is not relevant to any of the elements of age discrimination under the West Virginia Human Rights Act. Under *Lingle,* it is the elements of the plaintiff's claim, and not the issue of arbitrability, which must be capable of resolution without interpretation of the CBA in order for the claim to escape § 301 pre-emption. Surely, the defendants may present the arbitrability issue as a defense in state court upon remand. In that event, the state court would be required to reference the arbitration clause in the CBA. But as the Supreme Court made clear, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas,* 512 U.S. at 124, 114 S.Ct. 2068. Therefore, although the defendants may assert the plaintiff's alleged failure to exhaust arbitral remedies as a defense to the plaintiff's claim, this defense is insufficient in and of itself to establish pre-emption of the state-law claim under § 301. *Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. 2425.

For all the foregoing reasons, the Court **FINDS** that the plaintiff's state-law claim is independent of the CBA in that it may be resolved without interpreting the CBA. Therefore, the claim is not pre-empted by § 301 of the LMRA. The Court further **FINDS** that, in the absence of § 301 pre-emption, the Court is without Article III jurisdiction. Accordingly, the Court **GRANTS** the plaintiff's motion to remand and hereby **REMANDS** this action to the Circuit Court of Wood County, West Virginia. The Court further **ORDERS** that the case be **STRICKEN** from the docket of this Court. The Court **DIRECTS** the Clerk to send a certified copy of this Remand Order to counsel of record, any unrepresented parties, and the Circuit Court of Wood County, West Virginia.